UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 11-18-DCR
CIVIL ACTION NO. 13-7264-DCR

UNITED STATES OF AMERICA,                                                                PLAINTIFF,

V.                                    MAGISTRATE JUDGE'S
                              REPORT AND RECOMMENDATION

VICTOR SCHARSTEIN,                                                                        DEFENDANT.

On February 17, 2011, federal agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives executed a search warrant at Victor Scharstein's residence in Covington Kentucky. [R. 29]. From his residence they recovered a semi-automatic rifle, a fully assembled Molotov cocktail, and assorted ammunition. [R. 29]. On the same date, agents executed search warrants at his place of business and several storage units rented in his name, all in Covington, Kentucky. They recovered 13 firearms, over 23,000 rounds of ammunition, five (5) units of body armor, and seven (7) display fireworks. [R. 29].

A Grand Jury sitting in Covington, Kentucky, returned a single count indictment on March 10, 2011, charging Scharstein with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [R. 12]. Pursuant to a plea agreement with the United States, he entered a plea of guilty to the charge on June 27, 2011, before United States District Judge Danny Reeves. [R. 28, 40]. In that plea agreement, Scharstein agreed to waive "the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution." [R.40]. Scharstein was sentenced to thirty-seven (37) months in prison to be followed by two (2) years of supervised release. [R. 44]. Although he filed a notice of appeal [R. 46], he moved to voluntarily dismiss the appeal, a request which was granted on July 17, 2012

[R. 65]. On February 25, 2013, through counsel he filed the instant motion under 28 U.S.C. § 2255 seeking to vacate his guilty plea, conviction and sentence. [R. 72]. Although styled as "GROUND ONE" in his motion, Scharstein in effect presents three arguments: first, that had counsel given proper advice, he would have "proceeded to file a suppression motion and if the suppression motion had been granted, the government's case would have been subject to dismissal." [R. 88]; second, that "[c]ounsel should not have called Petitioner as a witness without prior to the hearing preparing him to testifying [sic] at the sentencing hearing relative to a four-(4) level enhancement based upon the number of firearms possessed. Petitioner's indictment was based upon possession of a single firearm." [R. 72]; and, third, that "[c]ounsel's failure to demand a jury determine the factual dispute regarding the number of firearms possessed at the sentencing hearing, resulting in a four (4) level guideline increase." [R. 72].

Because the first claim might arguably go to the validity of Scharstein's guilty plea, the Court will address its merits. However, for the reasons discussed below the Court has determined that Scharstein's plea was valid because it was knowing and voluntary, and this claim provides him with no relief. In addition, the second and third claims, which present arguments regarding alleged sentencing errors, are barred by his waiver of right to collaterally attack his guilty plea, conviction and sentence, and need not be addressed further.

## WHETHER THE PLEA WAS KNOWING AND VOLUNTARY

Although he waived his right to collaterally attack his guilty plea, conviction and sentence, Scharstein now alleges that his trial counsel denied him the benefit of a meritorious motion to suppress, which would allegedly have "gutted the government's case and would have resulted in dismissal of the charge against him". [R. 88]. As a result, Scharstein contends that

his guilty plea was "unknowing, involuntary and, entirely the result of his trial counsel relying upon his gut reaction to the affidavit in support of the search warrant without any challenge to the alleged facts contained in the affidavit." [R. 88]. Scharstein alleges that had counsel given proper advice, he would have "proceeded to file a suppression motion and if the suppression motion had been granted, the government's case would have been subject to dismissal." [R. 88]. He seeks an order vacating his guilty plea, conviction and sentence. For the reasons discussed below Scharstein's plea was not unknowing or involuntary, and it was not the product of ineffective assistance of counsel. His motion in this case provides no relief.

Scharstein does not dispute that he was informed of and understood the terms of the waiver provision contained within his plea agreement, which states: "[t]he Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution." [R.40]. Accordingly, his waiver of the right to collateral attack is binding and would ordinarily preclude the Court from reviewing his § 2255 motion. Watson, 165 F.3d at 489. Despite the binding waiver, claims that "go to the very validity of [the] guilty plea" are nevertheless cognizable in a habeas corpus motion. In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007). A guilty plea is valid only if it is made knowingly and voluntarily. Parke v. Raley, 506 U.S. 20, 28 (1992). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Id. at 29 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Accordingly, any claims challenging either the voluntariness or intelligence of Scharstein's guilty plea must be addressed by the Court.

Scharstein asserts one claim that arguably goes to the validity of his guilty plea, that is,

3

its knowing and voluntary nature. Specifically, he claims that his attorney failed to conduct a reasonable investigation that would have revealed false and stale information in the affidavit upon which the search warrants were based. Had counsel known, counsel would have informed Scharstein of the false, material information and would not have advised him to plead guilty, instead bringing a challenge to the warrants. Therefore, Scharstein contends, his plea was unknowing and involuntary.

A guilty plea may be found involuntary or unintelligent if it was induced by the ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 56 (1985). A "defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the" range of competence demanded of attorneys in criminal cases. Id. at 56-57. The validity of a plea may be challenged due to a lack of reasonably competent advice which negates the voluntary and intelligent character of the guilty plea. See Bradshaw v. Stumpf, 545 U.S. 175, 186 (2005).

A criminal defendant is entitled to effective representation by counsel at all critical stages of the proceedings, including plea negotiations. See King v. Bobby, 433 F.3d 483, 490 (6th Cir. 2006). To prevail on a claim of ineffective assistance of counsel based on counsel's advice during the plea process, a defendant must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the defendant would have pleaded differently. Griffin v. United States, 330 F.3d 733, 736-37 (6th Cir. 2003) (citations omitted). With respect to the first element, the proper measure of attorney performance is simply reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 688 (1984). Under the second element, the defendant

must show merely that there is a reasonable probability that, but for his attorney's error, he

would not have pled guilty and insisted on going to trial.  Griffin, 330 F.3d at 737.  "Defendants

alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" Pough v. United

States, 442 F.3d 959, 966 (6th Cir. 2006) (citing Whiting v Burt, 395 F.3d 602, 617 (6th Cir.

2005)).

**A.      Failure to learn of and advise of false and stale information in affidavit**

Scharstein claims that he would not have pled guilty had his attorney conducted the most

basic investigation into the case and learned that information in the affidavit regarding Jesse

Helphenstine was both false and state, which would have "gutted the government's case".[R.

88].

The record in this case reflects that on February 16, 2011, search warrants were issued

upon the application of Rusty Cox, a Special Agent with the ATF. [R. 80].  That affidavit, made

up of thirty-three paragraphs, contains information obtained from multiple sources.  A single

paragraph included the following information regarding Helphenstine:

> 3.  On or about April 22, 2009, affiant received a phone call from Jesse
> Helphenstine.  Helphenstine advised that he had been employed at Red Express
> and had recently been fired.  Helphenstine described the owner of Red Express,
> Victor Scharstein, as a paranoid person who collected guns even though he was a
> convicted felon.  Helphenstine explained that Scharstein had been arrested by
> ATF and sent to prison.  Helphenstine said Scharstein owned Red Express and
> had a sign on the flag pole that said everyone was welcome except ATF.
> Helphenstine explained that he was calling ATF because, while he was an
> employee, he purchased firearms for the company at Scharstein's request.
> According to Helphenstine, he purchased 2 handguns and 5 or 6 rifles for the
> business.  He said he paid cash for two of the firearms and used a company check
> to pay for the others.  He said he was instructed to purchase the firearms by
> Scharstein just in case something happens.  Helphenstine could not recall where
> he purchased the firearms, but advised that another employee, Nancy Jackson,
> also bought firearms for the business.  Helphenstine said he would get the receipt
> for the firearms and call affiant back.  Helphenstine never called back.  Affiant

    attempted to contact Helphenstine several times over the following months, to no avail.

[R. 80].

  Scharstein claims that this information contained within this paragraph of the affidavit was false. In support of this claim, Scharstein has provided two affidavits from Jesse Helphenstine. In the first, dated November 17, 2011, Helphenstine states that at no time did he speak with or provide information to any agent of the ATF, and more specifically, never provided information to Rusty Cox. A second affidavit signed by Helphenstine on April 27, 2012, contains as an exhibit the result of a polygraph examination conducted on Helphenstine stating that he has not provided false information in the affidavits. [R. 72]. In light of this information, Scharstein claims that his trial attorney was constitutionally ineffective for failing to investigate and learn of the false, material information contained within Agent Cox's affidavit. He claims that had his counsel learned of this information, he could have filed a motion to suppress which would have resulted in a finding that the search warrants were issued based upon stale and false information, resulting in the suppression of all evidence obtained during the searches, and would have effectively "gutted the government's case".[R. 88]. Scharstein charges that had his counsel advised him of this, he would not have entered a plea of guilty.

  To demonstrate a reasonable probability that he would have pleaded differently, Scharstein "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012) (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)). However, in considering alleged ineffective assistance of counsel in the guilty plea context, Scharstein must establish two

6

elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the defendant would have pleaded differently. Griffin v. United States, 330 F.3d 733, 736-37 (6th Cir. 2003) (citations omitted). With respect to the first element, the proper measure of attorney performance is simply reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 688 (1984). Under the second element, the defendant must show merely that there is a reasonable probability that, but for his attorney's error, he would not have pled guilty and insisted on going to trial. Griffin, 330 F.3d at 737. "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006) (citing Whiting v Burt, 395 F.3d 602, 617 (6th Cir. 2005)).

In the present case, then, in order to establish that his counsel acted ineffectively, impairing Scharstein's ability to enter a knowing and voluntary plea, he is required to show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, Scharstein would not have pled guilty. Assuming that counsel had learned of the allegedly false information contained in the affidavit, he could have asked the district court for a hearing under the Supreme Court decision of Franks v. Delaware, 438 U.S. 154 (1978). However, "[t]o deserve a Franks hearing to challenge the validity of a search warrant, a defendant must make a substantial showing of two elements: first, a defendant must show that the affiant included –either knowingly and intentionally or with reckless disregard for the truth – a false statement in the affidavit." United States v. Brown, 715 F.3d 985, 991 (6th Cir.2013)(citations omitted). Even if Scharstein is able to show that Special Agent Rusty Cox made a false and material statement in his affidavit knowingly and

7

intentionally, or with reckless disregard for its truth, Scharstein must show a second element: "that the probable-cause finding required the allegedly false statement." Id. at 992. Assuming, without finding, that Special Agent Rusty Cox included a false statement in the affidavit regarding his 2009 telephone conversation with Jesse Helphenstine, Scharstein merely argues, but does not show, that the court's finding of probable cause to support the issuance of a search warrant required the false statement.[1] "[I]f when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." United States v. Mastromatteo, 538 F.3d 535, 545 (6th Cir. 2008)(citing Franks, 438 U.S. at 171-72).

     Scharstein's motion ignores the fact that the ten (10) page affidavit of Rusty Cox contains only one paragraph in reference to Jesse Helphenstine, regarding a conversation nearly two (2) years before the affidavit was presented to a neutral judicial officer. The affidavit also contains a summary of other information, obtained from three other individuals: James Hiatt, Patsy Hiatt and Lauren Baker, whose unchallenged statements provided more complete, and recent information supporting probable cause to believe that Scharstein was violating the law by being a convicted felon in possession of a firearm. On January 19, 2011, twenty-eight (28) days before Rusty Cox tendered the affidavit, James Hiatt provided information to Agent Cox that he had known Scharstein since 2004; that Scharstein had a safe at his business where he stockpiled ammunition, and kept firearms at his house and explosives in a storage unit in Wilder, Kentucky.

---

[1] Probable cause to justify issuance of a search warrant requires the governmental entity or agent seeking the warrant to submit an affidavit that establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Berry, 565 F.3d 332, 338 (6th Cir.2009)(quoting Illinois v. Gates, 462 U.S. 213 (1983)).

[R. 80]. He further related that he saw Scharstein with homemade bombs on July 4, 2010, and that he had seen Scharstein with various explosives including 6-inch mortar shells, and that Scharstein kept multiple firearms at his house and /or business, including an AR15 rifle, .44 caliber revolver, and a .45 caliber revolver. [R. 80]. In November, 2010, he witnessed Scharstein and Nancy Jackson counting ammunition, and observed ammunition and laser sights in a safe located at Scharstein's business. [R. 80].

Hiatt's wife, Patsy Hiatt, also provided information that she had seen firearms in Scharstein's house and observed Scharstein possess firearms when she accompanied him to Florida. After someone broke into Scharstein's home, she and Nancy Jackson took Scharstein's guns to Red Express before calling Police to report the crime. [R. 80].

Lauren Baker lived at Scharstein's residence after he bonded her out of jail a few days before Thanksgiving, 2010. Scharstein gave her the combination to his safe to allow her to store her valuables, where he also kept an assault rifle. She stated that Scharstein always spoke of guns, gold, bunkers and how he wanted to build a tunnel from his house to his business, Red Express. She related that he always bragged of having all the guns and ammunition he would ever need. She was last at his residence around Christmas, 2010.

All of these statements, which relate information more recent in time and relevant to the offense committed by Scharstein, remain unchallenged. Even if the single paragraph referencing Jesse Helphenstine were excised from the affidavit, the remaining material is more than sufficient to support a finding of probable cause. Therefore, counsel was not ineffective for failing to learn that the information was allegedly false. Even had counsel learned of the allegedly false statement and was determined to be deficient in his representation for failing to

9

file a motion to suppress, Scharstein suffered no prejudice in the case because the remaining information in the affidavit was sufficient to support the finding of probable cause, and therefore the issuance of the search warrants. Thus, put simply, even if counsel was found to be deficient, there is not a reasonable probability that, but for counsel's error, Scharstein would have been granted a Franks hearing or pleaded differently. Griffin v. United States, 330 F.3d 733, 736-37 (6th Cir. 2003) (citations omitted). This is true because "even when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances." United States v. Cronic, 466 U.S. 648, 657 n. 19 (1984). In conclusion, Scharstein has failed to demonstrate that his attorney's advice fell outside the range of reasonable competence, and was not the product of ineffective assistance of counsel. Therefore, Scharstein's plea was not unknowing or involuntary and the waiver, valid.

## REMAINING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Following a Rule 11 colloquy, the district court found that Scharstein's guilty plea was knowing, intelligent and voluntarily, and that he waived his right to collaterally attack his guilty plea, conviction, and sentence. [R. 45]. It is well-established that a defendant's informed and voluntary waiver will bar a collateral attack on his guilty plea, conviction, and sentence, see Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999); such a waiver also bars collateral attacks based upon claims of ineffective assistance of counsel, so long as they do not relate to "the very validity of [the] guilty plea." In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007); see also, Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001). The Acosta panel provided guidance by stating that examples of claims going to the "very validity of the guilty plea," would be that "the plea was not knowing or voluntary, or was the product of ineffective assistance of counsel."

Acosta, 480 F.3d at 422. Similarly, the panel in Davila noted that the majority of other Circuits have found that claims of ineffective assistance of counsel can be waived unless they "relate *directly* to the plea agreement or the waiver." Davila, 258 F.3d at 451 (emphasis added). These decisions indicate that in order to be non-waivable, an ineffective assistance of counsel claim must have some direct relation to the guilty plea, and not merely a vaguely-articulable connection. Courts have noted that the following claims of ineffective assistance of counsel most often cannot be waived by a plea agreement: claims of ineffective assistance of counsel in entering the plea agreement; United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998); claims related to the actual negotiation of the plea agreement, Jones v. United States, 167 F.3d 1142, 1144-45 (7th Cir. 1999); claim that plea agreement was not "knowing and voluntary because it was the result of ineffective assistance of counsel," DeRoo v. United States, 223 F.3d 919, 923-24 (8th Cir. 2000); claims that counsel had engaged in "unprofessional inducement of the defendant to plead guilty or to accept a particular plea bargain," United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994); claims challenging the validity of the plea agreement or the waiver itself, United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001).

Scharstein raises two additional claims of ineffective assistance of counsel. First, he asserts that "[c]ounsel should not have called Petitioner as a witness without prior to the hearing preparing him to testifying [sic] at the sentencing hearing relative to a four-(4) level enhancement based upon the number of firearms possessed. Petitioner's indictment was based upon possession of a single firearm." [R. 72]. Second, he contends that "[c]ounsel's failure to demand a jury determine the factual dispute regarding the number of firearms possessed at the sentencing hearing, resulting in a four (4) level guideline increase." [R. 72]. Both of these

11

claims present arguments regarding sentencing. However, as a general rule, most errors involving sentencing do not go to the validity of the guilty plea itself. See e.g. United States v. Joiner, 183 F.3d 635, 644-45 (7th Cir. 1999) ("garden-variety attacks" on sentences, disguised as ineffective assistance of counsel claims, are normally within the scope of plea agreement waivers). Therefore, as these claims merely relate to alleged sentencing errors, and do not go to the validity of his plea, they require no further consideration.

## CONCLUSION

Accordingly, and for the reasons set forth above, it is recommended that the Defendant's Motion to Vacate, Set Aside, or Correct Sentence [R. 72] be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(a).

Signed August 9, 2013.



Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge